IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No.   24-34499-KHK |
| | ) | |
| H E NETER KUSH BEN ALKEBULAN, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| H E NETER KUSH BEN ALKEBULAN, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. 25-03005-KHK |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF EDUCATION, | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

## RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The United States of America, by counsel and pursuant to Rules 7056-1 and 9013-1(G)

of the Local Rules of Practice submits the following Memorandum in Support of its Motion for

Summary Judgment.

## INTRODUCTION

The plaintiff filed a Motion for Summary Judgment on September 10, 2025, setting forth

sixteen numbered statements which he designates as "undisputed, material facts." Dkt 28. The

Robert P. McIntosh (VSB No. 66113)
Assistant United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-7404
Facsimile: (804) 771-2316
Email:   Robert. McIntosh@usdoj.gov
*Counsel for the United States*

following plaintiff's statements are either *disputed* or *immaterial* or both for the reasons

indicated as follows:

| Statement Number | Disputed/ Admitted | Immaterial | Basis |
|---|---|---|---|
| 1 | Admitted | | |
| 2 | Incomplete | | Plaintiff's affidavit states that he was unemployed from January 28, 2025 through April 28, 2025 |
| 3 | Disputed | | The statement is unsupported by any sworn statement or other admissible evidence. |
| 4 | Disputed | | The statement is unsupported by any sworn statement or other admissible evidence and is contrary to plaintiff's deposition testimony. |
| 5a | Admitted | | |
| 5b | Disputed | Immaterial | The statement is a conclusion of law. Moreover, it is an **incorrect** statement as applying to student loan undue hardship analysis. |
| 5c | Disputed | | The statement is unsupported by any sworn statement or other admissible evidence and is contrary to plaintiff's deposition testimony. |
| 5d | Disputed | | The statement is unsupported by any sworn statement or other admissible evidence. |
| 6 | Admitted | | |
| 7 | Admit part | | Plaintiff's total outstanding loan balance in this bankruptcy was computed to be $39,026.64. The remainder of the statement is unsupported by any evidence cited by the plaintiff. |
| 8 | Admitted | | |
| 9 | Disputed | | The statement is unsupported by any sworn statement or other admissible evidence. |
| 10 | Admit part | | Plaintiff has an Associate's Degree. The plaintiff *did* withdraw from Florida Memorial University and the University of South Alabama |
| 11 | Admitted | | |
| 12 | Admit part | Immaterial | The loans have been required to be repaid for ten years, but plaintiff has made virtually no effort to repay them. Dischargeability is not "presumed." |
| 13 | Disputed | Immaterial | Plaintiff relies on attorney-client communication erroneously filed with the Court. ED's initial opinions are wrong. |
| 14 | Disputed | | The statement is unsupported by any sworn statement or other admissible evidence. |
| 15 | Disputed | | The statement is unsupported by any sworn statement or other admissible evidence. |
| 16 | | Immaterial | No facts are stated. Reliance on previously filed pleadings does not state any undisputed, material fact. |

## STATEMENT OF UNDISPUTED, MATERIAL FACTS

1. Plaintiff is 44 years old, unmarried, with no dependents, and resides in Chesterfield,

Virginia. Dkt 28, ECF p. 2, ¶ 1.

2. Plaintiff attended Vance Granville Community College for two years and earned an

associate's degree. Alkebulan Deposition (Alkebulan Dep), p. 6 (line 25) through p. 7 (line 1).

3. In high school and college, the plaintiff got good grades and was awarded a scholarship.

*Id.*, p. 23 (lines 2-25).

4. Plaintiff states that he ha[d] zero income as of January 28th, 2025, *through April 28,*

*2025*. Dkt 28, ECF p. 3, ¶ 2; Dkt 29, ECF p. 2. As of November 26, 2024, plaintiff asserted that his

monthly household expenses were $2,811.12. *See* Main Case, Bk No. 24-34499-KHK, Schedule J

(Expenses), Dkt 1, ECF p. 49 (line 22c). Notably, plaintiff listed $1,335.81 (of the $2,811.12 total) as

"rental or home ownership expenses for [his] residence," including "first mortgage payments and any

rent for the ground or lot." *Id*.[1]

     5.    The plaintiff's adjusted gross income, taxable income, and total wages as reported to the

Internal Revenue Service and the Social Security Administration is summarized as follows:

| YEAR | AGI | TI | TOTAL WAGES | |
|------|-----|----|-----|---|
| 1997 | $6,307.00 | | $6,307.00 | SSA |
| 1998 | $2,719.00 | | $2,719.00 | SSA |
| 1999 | $2,902.00 | | $2,902.00 | SSA |
| 2000 | $1,989.00 | | $1,989.00 | SSA |
| 2001 | $8,524.00 | | $8,524.00 | SSA |
| 2002 | $4,399.00 | | $4,399.00 | SSA |
| 2006 | $1,384.00 | | $1,384.00 | SSA |
| 2010 | $661.00 | | $661.00 | SSA |
| 2011 | $3,959.00 | | $3,959.00 | SSA |
| 2012 | $3,531.00 | | $3,531.00 | SSA |
| 2013 | $7,516.00 | | $7,516.00 | SSA |
| 2014 | $1,868.00 | | $1,868.00 | SSA |
| **2015** | **$20,364.00** | **$10,064.00** | $371.00 | SSA |
| **2016** | **$29,988.00** | **$19,638.00** | $0.00 | SSA |
| **2017** | **$17,493.00** | **$7,093.00** | $0.00 | SSA |
| **2018** | **$40,554.00** | **$22,843.00** | $40,298.00 | SSA |
| **2019** | **$59,471.00** | **$37,817.00** | $59,096.00 | SSA |
| **2020** | **$56,259.00** | **$35,087.00** | $51,752.00 | SSA |
| **2021** | **-$2,185.00** | | | IRS |
| **2022** | **-$12,456.00** | | | IRS |
| **2023** | **-$3,000.00** | | | IRS |
| **2024** | **$10,196.00** | | **$13,196.00** | IRS |

*See* Summary attached to Declaration of Robert McIntosh.

---

[1] *Compare* Plaintiff's Statement of Fact (SOF) No. 3 ("Plaintiff resides in a shed behind his mother's home,

6.    Notably, in tax years 2021, 2022, and 2023, the plaintiff did not work at all. He lived in Thailand during all three years, supporting himself from the sales of shares traceable to Fresh Start Beverage, LLC, a business the plaintiff started and for which he initially was the 100 percent shareholder. The business attracted investors, sold product nationwide, and ultimately was sold to a publicly traded company. Although the plaintiff reported a loss on the sales of his shares, income from the sale of shares was sufficient to support himself and girlfriend in Thailand for three years. *See* Alkebulan Dep, p. 35 (lines 9-20); p. 64 (line 23) through p. 65 (line 14); p. 66 (line 16) through p. 68 (line 15); p. 69 (line 14) through p. 71 (line 3).

7.    After returning to the United States, in 2024 the plaintiff obtained employment with Walmart and Regal Cinema. He resigned both positions because "[t]hey wouldn't work with [my] schedule" and "did not have any advancement" positions available. When he applied for the position with Walmart, he "appl[ied] for the warehouse" or "stockroom" where he was required to lift 40-50 pounds consistently. Alkebulan Dep., p. 77 (line 15) through p. 79 (line 23).

8.    In 2018, the plaintiff moved to Las Vegas, Nevada where he supported himself "doing driving jobs . . . such as Ride Share, things like that." *Id.* at p. 29 (line 15) through p. 30 (line 12). He resided in Las Vegas from 2018 through all of 2019 and 2020, until leaving for Thailand in 2021. *Id.,* at p. 33 (lines 9-16). The plaintiff's income during these years ranged from more than $40,000 to almost $60,000.

9.    In the year that plaintiff reported his highest amount of income from wages—exceeding $59,000—in 2019, the plaintiff also received a lump sum payment in an amount exceeding $22,000.[2]

---

lacking a private kitchen or bathroom.")

[2] Plaintiff alleges, without any evidentiary support, that he "spent the entirety of these [settlement] funds on **further medical care, physical therapy, and to maintain a minimal standard of living in Las Vegas, Nevada,** where he worked as a self-employed ride-share driver during recovery." Plaintiff's SOF 5c, Dkt 28, p. 3 (emphasis supplied by the plaintiff). This allegation is squarely contradicted by his deposition testimony:

Q. Was that given to you all in one lump sum?

*Id.*, p. 61 (lines 11-17); Exhibit 5 attached to Declaration of Robert McIntosh (McIntosh Dec).

Plaintiff made no payment toward the student loans. The only payment ever credited to the plaintiff's

student loans is one payment for $73. *See* Dkt 28, p. 4, ¶ 8, Plaintiff's SOF 8 ("Plaintiff has made

$73 in payments").

10.    Plaintiff has not seen any doctors or chiropractors since his personal injury settlement in

January 2019:

> **Q.    Have you seen any doctors or chiropractors since you were paid the
> settlement amount in January of 2019?**
>
> A.    I, I wouldn't, I wouldn't, I wouldn't call them . . . MD doctors, but I do, I go and
> see like, holistic doctors, naturopathic doctors for, for like the pain and like
> therapy, things like that. Where I could use natural, natural herbs. I can buy from
> Whole Foods, places like that. That's about it.

Alkebulan Dep., p. 87 (line 25) through p. 88 (line 9). Moreover, the plaintiff does not have any

records or documentation of having seen any holistic practitioner:

> Q.    Do you have records and documentation of those visits?
>
> A.    No, because it's not, they're not, they're not a, yeah, I wouldn't say that they
> have, they're a formal establishment, you know, type of places. So, no.

*Id.,* p. 88 (lines 10-15).

---

A. Yes.
Q. What did you do with it?
A. Used it for to maintain my living expenses.
Q. Did it just like going to your bank account?
A. Yes.
Q. Then what did you pay with that amount?
A. Just normal expenses rent food, gas cell phone, internet, just basic living expenses . . . .

Alkebulan Dep., p. 59 (lines 20-25), 60 (lines 1-6). Plaintiff's contradicting his prior sworn testimony does not
create a disputed fact. E.g., Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986) (citation omitted) ("A
party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made,
which contradicts her earlier deposition testimony"); Raskin v. Wyatt Co., 125 F.3d 55, 63 (2nd Cir. 1997) ("[A]
party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by
omission or addition, contradicts the affiant's previous deposition testimony"); RSBI Aerospace, Inc. v. Affiliated
FM Ins. Co., 49 F.3d 399, 402 (8th Cir. 1995) ("parties to a motion for summary judgment cannot create sham issues
of fact in an effort to defeat summary judgment").

11.    The medical records that *do exist* establish that the plaintiff did not—in 2018—have any significant impairment. During the month following his accident, medical records document that "patient complains of post traumatic neck pain following MVA Injury. Dkt 29, ECF p. 81. However, upon MRI study, spinal cord was "normal in internal signal and caliber." In the cervical spine, at C2/C3 and C3/C4, there was "*no* disk protrusion," "*no* evidence of cord impingement," "*no* disk degeneration." At C4/C5 and C5/C6 there was a "central disk herniation" and a "tear of 2 mm" that resulted in "*mild* spinal canal stenosis," but "*no* evidence of cord impingement" and "*no* disk degeneration." *Id.* (emphasis added). Other examination resulted in a diagnosis of "sprain ligaments" of the thoracic, lumbar and cervical spine, with disc displacement at mid-cervical and "post-trauma headache." Dkt 29, ECF p. 79.

12.    On September 25, 2018, the most recent date for which documents exist, the medical record reflects that "the patient . . . states that *he is not having any neck or back pain*. The patient denies radicular symptoms in the upper extremities in the form of numbness, tingling, pain, and weakness. The patient reports radicular symptoms in the lower extremities in the form of pain. He states that his average leg pain is 5/10 and 7/10 at its worst. Dkt 29, ECF p. 95 (emphasis added).

13.    In February 2025, the plaintiff successfully completed a course funded by the Commonwealth of Virginia, resulting in his obtaining a commercial driver's license. It is expected that the plaintiff can earn between $40,000 to $50,000 per year in an entry level position as a commercial truck driver. Alkebulan Dep., p. 81 (line 11) through p. 84 (line 4).

## STANDARD FOR GRANTING SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered" where "there is no genuine issue as to any material fact" and the movant "is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P.; see Miller v. Leathers, 913

F.2d 1085, 1087 (4th Cir.1990) (en banc) cert. denied, 498 U.S. 1109 (1991). In evaluating a

motion for summary judgment, the Court must "view[ ] the record as a whole and in the light

most favorable to the nonmoving party." Clark v. Alexander, 85 F.3d 146, 150 (4th Cir.1996).

Summary judgment is appropriate when the record, taken as a whole, could not lead a rational

trier of fact to find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

247-49 (1986). In other words, "Rule 56(c) mandates the entry of summary judgment . . . against

a party who fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477

U.S. at 322.

      A plaintiff may not defeat a properly supported motion for summary judgment by relying

merely on "belief or conjecture, or the allegations and denials contained in his pleadings."

Doyle v. Sentry Insur., 877 F. Supp. 1002, 1005 (E.D. Va.1995) (citing Celotex Corp. v. Catrett,

477 U.S. 317, 324 (1986)).   Rather, the nonmoving party must set forth specific facts through

affidavits, depositions, interrogatories, or other evidence to show genuine issues for trial. See

Celotex, 477 U.S. at 324. However, a non-moving party may not creat a factual issue simply by

submitting an affidavit contrary to her own prior statements. E.g., Reid v. Sears, Roebuck & Co.,

790 F.2d 453, 460 (6th Cir. 1986) (citation omitted) ("A party may not create a factual issue by

filing an affidavit, after a motion for summary judgment has been made, which contradicts her

earlier deposition testimony"); Raskin v. Wyatt Co., 125 F.3d 55, 63 (2nd Cir. 1997) ("[A] party

may not create an issue of fact by submitting an affidavit in opposition to a summary judgment

motion that, by omission or addition, contradicts the affiant's previous deposition testimony");

RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 402 (8th Cir. 1995) ("parties to a

motion for summary judgment cannot create sham issues of fact in an effort to defeat summary

judgment").

ARGUMENT

I.   THE PLAINTIFF CANNOT SHOW THAT REPAYMENT OF HIS STUDENT
     LOANS WOULD CONSTITUTE AN UNDUE HARDSHIP.

The Fourth Circuit has adopted the three-part test set out by the Second Circuit in

Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2nd Cir. 1987), for

determining whether an "undue hardship" exists within the meaning of § 523. See Ekenasi v.

Education Resources Institute, 325 F.3d 541, 546 (4th Cir. 2003) (Chapter 13); Educational

Credit Management Corporation v. Frushour (In re Frushour), , 433 F.3d 393, 400 (4th Cir.

2005) (Chapter 7). Educational Credit Managment Corporation v. Mosko, (In re Mosko), 515

F.3d 319 (4th Cir. 2008).   Spence v. Educational Credit Managment Corp. v. Spence, (In re

Spence), 541 F.3d 538 (4th Cir. 2008).

Section 523(a)(8) of the Bankruptcy Code (11 U.S.C.) creates a presumption of

nondischargeability of student loans, and the burden of establishing that student loans are

dischargeable falls upon the debtor. In re Triplett, 357 B.R. 739, 742 (Bankr. E.D. Va. 2006)

(citing United States v. Wood, 925 F.2d 1580, 1583 (7th Cir. 1991)). In order to do that, the

debtor must prove, (1) that he cannot maintain a minimal standard of living for himself and his

dependant, based upon his current income and expenses, if he is required to repay the student

loans; (2) that additional circumstances indicate that his inability to so do is likely to exist for a

significant portion of the repayment period of the student loans; and (3) that he has made good

faith efforts to repay the loans. Frushour, 433 F.3d at 400 (citing Brunner, 831 F.2d at 396).

—8—

Failure to meet one prong of the test means the inquiry must end and the discharge be denied. See In re Faish, 72 F.3d 298, 306 (3rd Cir. 1995), cert. denied 518 U.S. 1009 (1996); In re Roberson, 999 F.2d 1132, 1135 (7th Cir. 1993).   In this case, the plaintiff cannot meet the second and third of the three requirements.

1.   Present inability to pay. Although plaintiff has not offered any sworn testimony or documentation concerning his current employment, income and expenses, his bankruptcy schedules show that his monthly expenses exceed his total monthly income. SOF 4. Although the plaintiff's statement about his income and expenses may strain a factfinder's credulity[3] the credibility of plaintiff's evidence is not weighed when determining a motion for summary judgment and, for purposes of summary judgment, the United States will not attempt to dispute the first factor. Plaintiff also has provided a statement that he was unemployed from January 28, 2025, through April 28, 2025. His deposition testimony establishes that his unemployment was voluntary—a factor relevant to the good faith requirement (below). See SOF 7.

2.   No "additional circumstances" indicate that any current inability to pay will extend for a significant period of the loan.   The undisputed facts establish that the plaintiff cannot meet the second prong of the Brunner standard. There are no additional circumstances that would indicate that any present inability to pay is likely to exist for a significant portion of the repayment period of the student loans.

To be entitled to a hardship discharge under the Brunner standard, the debtor must demonstrate that additional circumstances exist indicating that his inability to maintain a minimal standard of living is likely to persist for a significant portion of the repayment period of the

---

[3] i.e., plaintiff claims a monthly expense in the amount of $1,335.81 for "rental or home ownership expenses for [his] residence," including "first mortgage payments and any rent for the ground or lot," while also claiming that he lives in a shed behind his mother's residence lacking a private kitchen or bathroom.

student loans. As detailed in <u>In re Webb</u>, 132 B.R. 199 (Bankr. M.D. Fla. 1991), the type of

hardship envisioned by Congress under § 523(a)(8) is extraordinary circumstances that cause the

debtor extreme hardship if the educational loan is repaid, and that these circumstances will

remain for the foreseeable future: "[M]ost or possibly all debtors could make a 'garden variety'

hardship claim in good faith.   Congress intended to require more than simply a present inability

to pay the obligation."   <u>Webb</u>, 132 B.R. at 202.   <u>See also</u> <u>Luna v. Educational Credit</u>

<u>Management Corporation</u>, 236 B.R. 291, 293 (Bankr. M.D. Fla. 1999); <u>In re Love</u>, 33 B.R. 753,

754-55 (Bankr. E.D. Va. 1983) (holding that a debtor must show that "'unique' or 'extraordinary'

circumstances . . . render it unlikely that the debtor would be able to honor . . . [the student loan]

obligations."); <u>In re Ballard</u>, 60 B.R. 673 (Bankr. W.D. Va. 1986) (holding student loans

nondischargeable even though debtor's current expenses exceeded his take home salary by

approximately $470).

As this Court has noted, "Courts have interpreted undue hardship to be very stark." <u>In re</u>

<u>Lohr</u>, 252 B.R. 84, 86 (E.D. Va. 2000) (*citing* <u>In re Wilson</u>, 177 B.R. 246, 248 (Bankr. E.D. Va.

1994). Indeed, debtors are not entitled to a discharge of their student loan indebtedness unless

they can meet the "demanding requirement" necessitating that they show "'a certainty of

hopelessness' which confirms that the debtor will not be able to repay the loans." <u>In re Spence</u>,

541 F.3d at 544. *See also* <u>In re O'Hearn</u>, 339 F.3d 559, 564 (7th Cir. 2003) (additional

circumstances indicating that present inability to pay is likely to persist requires a "certainty of

hopelessness" "based on the 'presence of "unique" or "extraordinary" circumstances which

would render it unlikely that the debtor ever would be able to honor his [or her] obligations.'");

<u>In re Weir</u>, 296 B.R. 710, 716 (Bankr. E.D. Va. 2002) (Undue hardship is not based on a present

—10—

inability to pay but rather upon a "certainty of hopelessness that future payments cannot be made") (*quoting* <u>In re Love</u>, 33 B.R. 753, 755 (E.D. Va.1983))

Serious illness is generally recognized "as one of the most frequent bases for demonstrating unique or exceptional circumstances justifying a determination of undue hardship." <u>In re Hoskins</u>, 292 B.R. 883, 887 (Bankr. C.D. Ill. 2003) (citing <u>Brunner</u>); *see* <u>In re Pace</u>, 288 B.R. 788, 792 (Bankr. S.D. Ohio 2003) ("A significant focus regarding the undue hardship inquiry centers around medical conditions that are so serious, that they impair a debtor's earning capacity for the duration of the repayment period").

The plaintiff alleges that he "suffers from **permanent orthopedic and spinal impairments** stemming from a near-fatal motorcycle accident [in 2006]" and that he experiences "chronic back pain, reduced range of motion, and lower-extremity weakness" that "severely limit[s his] mobility and eliminate[s] the possibility of sustained physical labor," Plaintiff's SOF 4 (emphasis by the plaintiff). Plaintiff's statement is disputed (*see* above) and is contradicted by the available medical records. *See* SOF 11 (during the month following his accident, medical records document that the plaintiff "complain[ed] of post traumatic neck pain" but his MRI study showed "central disk herniation" and a "tear of 2 mm" that resulted in "mild spinal canal stenosis" at C4/C5 and C5/C6 but "no evidence of cord impingement" and "no disk degeneration" with "sprain ligaments" at the thoracic, lumbar and cervical spine). Notably, the plaintiff has not seen any medical doctors or chiropractors since his personal injury settlement in January 2019. SOF 10. Evidence of plaintiff's condition in 2018 is not evidence of plaintiff's current condition. Since 2018, the plaintiff has applied for work, and did work in a "warehouse" or "stockroom" where he was required to lift 40-50 pounds consistently. SOF 7.

He has become qualified to be a commercial truck driver. SOF 13. The plaintiff also reports

that he volunteers his "time to Feed More, helping make sure people in his community ha[ve] a

meal," Plaintiff's SOF 14. The undisputed facts show that the plaintiff is capable of working without

accommodations. His failure to work is by choice. *See* SOF 7.

In this case, additional circumstances do not support a finding that excepting the loans from

discharge would impose an undue hardship on the plaintiff. First, the plaintiff is only 44 years old

and is in good health. He has an associate's degree, had good grades, and has a commercial driver's

license enabling him to earn between $40,000 and $50,000 at the entry level position. The plaintiff

simply cannot show that any current difficulty in repaying his student loans will persist for a

significant portion of the repayment period of his student loans.

The plaintiff's ability to work is much more favorable than that of the plaintiff in Spence,

where the Fourth Circuit held that a debtor, who at the time was "in her late 60s," had "a

low-paying job," and "suffer[ed] from diabetes and high blood pressure" could not demonstrate

"additional circumstances" that her current inability to pay would persist for a significant period

of the loans because her current circumstances were not "outside of the normal hardships faced

by bankruptcy petitioners, that would render her situation hopeless." Spence, 541 F.3d at 544.

*See also* In re Love, 33 B.R. 753, 755 (E.D. Va. 1983) ("undue hardship" is not based upon a

present inability to pay but rather upon a "'certainty of hopelessness' that future payments cannot

be made").

   3.   Plaintiff cannot establish good faith efforts to repay the loans.

The third Brunner factor requires the plaintiff to show that he "has made good faith

efforts to repay his loans." In re Frushour, 433 F.3d 393, 402 (4th Cir. 2005) (*quoting* Brunner,

831 F.2d at 396). The "good faith" factor "looks to the debtor's 'efforts to obtain employment,

maximize income, and minimize expenses.'" Id. (*quoting* O'Hearn v. Educ. Credit Mgmt. Corp., 339 F.3d 559, 564 (7th Cir. 2003). Additionally, the "debtor's hardship must be a result of factors over which [he] had no control." Id. Finally, "[g]ood faith attempts to repay loans require [the] debtor to have made payments when he . . . was in a position to make such payments." In re Weir, 296 B.R. 710, 717 (Bankr. E.D. Va. 2002) (Tice, C.J.).

The undisputed facts establish that the plaintiff has made only one payment of $73 toward his student loan indebtedness. SOF ¶ 9. Instead, he obtained deferments and forbearances at a time of his highest earning, highest income. Moreover, when at the pinnacle of his earning, the plaintiff received a lump sum payment of more than $22,000. He used none of those funds to pay the student loans. *Id. See* In re Thompson, 329 B.R. 145, 181 (Bankr. E.D. Va. 2005) (St. John, J.) ("good faith effort also requires 'the debtor to have made payments when he or she was in a position to make such payments'") (*quoting* Lohr v. Sallie Mae (In re Lohr), 252 B.R. 84, 89 (Bankr. E.D. Va. 2000)); Graddy v. Educ. Credit Mgmt. Corp., 615 B.R. 336, 352 (N.D. Ga. 2020), *aff'd sub nom.* In re Graddy, 852 F. App'x 509 (11th Cir. 2021) ("At a minimum, '[g]ood faith effort . . . requires the debtor to have made payments when [he] was in a position to make such payments.'") (*quoting* In re Hill, 598 B.R. 907, 921 (Bankr. N.D. Ga. 2019) (*citing* In re Thompson, 329 B.R. at 184)).

The plaintiff also has not made efforts to maximize his income. *See* SOF 6 (in tax years 2021, 2022, and 2023, the plaintiff did not work at all), 7 (plaintiff voluntarily resigned his employment).

CONCLUSION

"Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); See also Cray Comm., Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 393-94 (4th Cir. 1994).   Because the plaintiff cannot show: (2) that additional circumstances indicate that any present inability to pay is likely to exist for a significant portion of the repayment period of the student loans; and (3) that he has made good faith efforts to repay the loans. The plaintiff's complaint seeking a discharge of his student loan obligation based on undue hardship must be dismissed.

DATED this _____ day of October, 2025.

Respectfully submitted,

LINDSEY HALLIGAN
United States Attorney

By:    /s/ Robert P. McIntosh_____
       Robert P. McIntosh
       Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 1, 2025, I will electronically file the foregoing

RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

with the Clerk of Court using the Court's CM/ECF system, which will then send a notification of

such filing and link to the electronically filed documents via ECF e-mail to the following

individual(s) at their addresses of record on the ECF system as follows:


Service of the foregoing was made upon the following non-users of the Court's CM/ECF

System by sending a .pdf copy by email transmission to:


      H E Neter Kush Ben Alkebulan
      6304 Claypoint Road
      Chesterfield, VA 23832
      Email: hisexcellencyalkebulan@gmail.com
      *Plaintiff, pro se*


Date: October 1, 2025.

      /s/ Robert P. McIntosh_____
      ROBERT P. MCINTOSH